Bonnie MacNaughton (CA State Bar No. 107402)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, 33rd Floor
Seattle, Washington 98104-1610
Telephone: (206) 622-3150
Facsimile: (206) 757-7700
Email: bonniemacnaughton@dwt.com

Attorney for Meta Platforms, Inc.

# IN THE UNITED STATES DISTRICT COURT

# THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| META PLATFORMS, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL FOLGER,<br><br>Defendant. | Case No. 3:25-cv-01672-LB<br><br>**PLAINTIFF META PLATFORMS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hearing Date: May 15, 2025<br>Hearing Time: 9:30 a.m.<br>Courtroom: B, 15th Floor<br>Judge: Hon. Laurel Beeler<br><br>Complaint filed: February 18, 2025 |

# TABLE OF CONENTS

| | | Page |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF FACTS | 2 |
| | A. Meta Owns and Operates Instagram Under the Terms. | 2 |
| | B. Folger's Misconduct Violated the Terms. | 2 |
| | C. Folger Failed to Comply with Meta's Demand to Cease and Desist His Unlawful Conduct. | 3 |
| III. | LEGAL STANDARD | 5 |
| | A. Diversity Jurisdiction | 5 |
| | B. Motion to Dismiss for Lack of Jurisdiction | 5 |
| IV. | ARGUMENT | 6 |
| | A. Meta's Attorneys' Fees are Recoverable and Will Exceed $75,000. | 6 |
| | B. A Permanent Injunction Could Cost Folger Over $75,000 in Lost Profits. | 9 |
| | C. Meta's Compensatory Damages Exceed $75,000. | 10 |
| | D. Punitive Damages Further Increase the Amount in Controversy. | 11 |
| V. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chavez v. JPMorgan Chase & Co.*,
 888 F.3d 413 (9th Cir. 2018) .................................................................................................. 7, 9

*Corral v. Select Portfolio Servicing, Inc.*,
 878 F.3d 770 (9th Cir. 2017) ..................................................................................................... 10

*Facebook, Inc. v. Power Ventures, Inc.*,
 252 F. Supp. 3d 765 (N.D. Cal. 2017) ....................................................................................... 10

*Fierro v. Capital One, N.A.*,
 2022 WL 17486364 (S.D. Cal. 2022) .................................................................................. 9, 10

*Fritsch v. Swift Transp. Co. of Ariz., LLC*,
 899 F.3d 785 (9th Cir. 2018) ....................................................................................................... 7

*Gen. Motors Corp. v. Manly Oldsmobile-GMC, Inc.*,
 2007 WL 776261 (N.D. Cal. 2007) ............................................................................................. 6

*Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*,
 599 F.3d. 1102 (9th Cir. 2010) .................................................................................................... 6

*Gibson v. Chrysler Corp.*,
 261 F.3d 927 (9th Cir. 2001), *holding modified by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) .......................................................................................... 11

*Guglielmino v. McKee Foods Corp.*,
 506 F.3d 696 (9th Cir. 2007) ....................................................................................................... 5

*In re Ford Motor Co./Citibank (South Dakota), N.A.*,
 264 F.3d 952 (9th Cir. 2001) ....................................................................................................... 9

*Lewis v. Verizon Commc'ns, Inc.*,
 627 F.3d 395 (9th Cir. 2010) ....................................................................................................... 8

*Lokey v. CVS Pharmacy, Inc.*,
 2020 WL 5569705 (N.D. Cal. 2020) (Beeler, J.) ....................................................................... 7

*Meta Platforms, Inc. v. Arowokoko*,
 2023 WL 3035454 (N.D. Cal. 2023) .................................................................................. 10, 11

*Molina v. Richardson*,
 578 F.2d 846 (9th Cir. 1978) ....................................................................................................... 5

*Naffe v. Frey*,
 789 F.3d 1030 (9th Cir. 2015) ................................................................................................ 1, 5

*Nat'l Abortion Federation v. Ctr. for Med. Progress*,
   533 F. Supp. 3d 802 (N.D. Cal. 2021) .................................................................................. 10

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ........................................................................................... 5, 6

*Simmons v. PCR Tech.*,
   209 F. Supp. 2d 1029 (N.D. Cal. 2002) ................................................................................. 7

*Smith v. City of Oakland*,
   612 F. Supp. 3d 951 (N.D. Cal. 2020) ................................................................................... 5

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*,
   303 U.S. (1938) ...................................................................................................................... 5

*Stelzer v. Carmax Auto Superstores Cal., LLC*,
   2013 WL 6795615 (S.D. Cal. 2009) ...................................................................................... 9

**Statutes**

28 U.S.C.
   § 1332 ..................................................................................................................................... 1
   § 1332(a) .............................................................................................................................. 11
   § 1332(a)(1) ........................................................................................................................... 5

California Civil Code
   § 3294(c)(1) ......................................................................................................................... 11
   § 3294(c)(3) ......................................................................................................................... 11
   § 3294 subd.(c) .................................................................................................................... 11

California Penal Code
   § 502 ...............................................................................................................................*passim*
   § 502(e)(2) ............................................................................................................................. 6
   § 502(e)(4) ........................................................................................................................... 11

**Rules**

Rule 12(b)(1) ................................................................................................................................ 5

**Other Authorities**

https://help.instagram.com/termsofuse ........................................................................................ 2

## I. INTRODUCTION

Starting no later than April 2022 and continuing until at least February 2025, Defendant Daniel Folger ("Folger") repeatedly violated the Instagram Terms of Use ("Terms") by selling Instagram usernames and unauthorized Instagram account reinstatement services. Folger's account reinstatement services were intended to circumvent Meta's enforcement actions taken in response to users who violated the Terms and other rules that govern access to and use of Instagram, including Instagram's Community Guidelines.

Based on Folger's multiple violations of the Terms, Meta revoked Folger's access to Instagram in March 2023 and disabled his user accounts. In response to Meta's enforcement efforts, Folger created and used new Instagram accounts to continue selling Instagram usernames and account reinstatement services. Because of Folger's persistent misconduct, Meta filed this action for breach of contract and violation of California Penal Code § 502.

On April 7, Folger filed a Motion to Dismiss the Complaint, arguing the Court lacks subject matter jurisdiction ("Motion," Dkt. 9). The Court should deny Folger's Motion. The Court has diversity jurisdiction under 28 U.S.C. § 1332, which grants federal courts jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000. Folger does not dispute that he and Meta are citizens of different states and argues only that "the amount in controversy does not exceed $75,000." Mot. at 4. However, to justify dismissal "it must appear to a legal certainty" that less than $75,000 is at issue in this lawsuit. *Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015). Folger cannot meet this "very difficult" standard. *Id.* Meta's Complaint alleges in good faith an amount in controversy exceeding $75,000, and Folger offers no colorable argument for dismissal.

The Court must consider the aggregated value of Meta's potential remedies; there is no requirement that any individual remedy exceed the $75,000 threshold. When the value of Meta's remedies—Meta's attorneys' fees, injunctive relief, compensatory damages, and punitive damages—are considered together, it is clear Folger has failed to demonstrate that there is "legal certainty" that less than $75,000 is in dispute. In fact, Meta submits evidence showing it has

1

META'S OPPOSITION TO FOLGER'S MOTION TO DISMISS
Case No. 3:25-cv-01672-LB

already incurred over $75,000 in attorneys' fees and compensatory damages. Accordingly, the Court should deny Folger's Motion.

## II. STATEMENT OF FACTS

### A. Meta Owns and Operates Instagram Under the Terms.

Meta is a Delaware corporation with its principal place of business in Menlo Park, San Mateo County, California. Complaint (Dkt. 1) ¶ 4. Meta owns and operates, among other services, Instagram. *See id.* ¶¶ 11–13. Instagram is a free photo and video sharing service, website, and mobile application. *Id.* ¶ 11. Instagram users can upload photos and videos to Instagram and share them with others. *Id.* They can also view, comment, and like posts shared by others on Instagram. *Id.*

Everyone who creates an account or uses Instagram must agree to Instagram's Terms.[1] Compl. ¶ 14. Among other things, the Terms prohibit users from (1) "attempt[ing] to buy, sell, or transfer any aspect of your account (including your username); solicit, collect, or use login credentials or badges of other users; or request or collect Instagram usernames, passwords, or misappropriate access tokens"; (2) "doing 'anything unlawful, misleading, or fraudulent for an illegal or unauthorized purpose'"; (3) "misusing any reporting, dispute, or appeals channel, such as by making fraudulent or groundless reports or appeals"; or (4) "doing 'anything to interfere with or impair the intended operation of [Instagram].'" *Id.* ¶¶ 15–18. Additionally, the Terms state that a person cannot use Instagram if Meta has previously disabled the user's account for violating any of Meta's policies. *Id.* ¶ 19.

### B. Folger's Misconduct Violated the Terms.

From no later than August 2022 through at least February 2025, Folger violated the Terms by offering for sale and selling Instagram usernames. Compl. ¶¶ 29–34. Folger used his Instagram and Telegram accounts to advertise his ability to obtain and sell Instagram usernames, even proclaiming himself "the king" of Instagram username sales. *Id.* ¶¶ 30–32.

From no later than April 2022 through at least February 2025, Folger offered for sale and sold unauthorized Instagram account reinstatement services for disabled or otherwise restricted

---

[1] The Terms are located at https://help.instagram.com/termsofuse.

META'S OPPOSITION TO FOLGER'S MOTION TO DISMISS
Case No. 3:25-cv-01672-LB

Instagram accounts. Compl. ¶ 35. He advertised these services on Instagram, claiming he can "bring[] back disabled [I]nstagram accounts" and "whitelist any [Instagram] account to be safe from any takedowns." *Id.* ¶ 37. In at least one known incident, Folger conspired with a now-terminated Meta contractor to misuse an internal Meta appeal channel to circumvent enforcement actions Meta took on a particular disabled Instagram account by causing that account to be reinstated. *Id.* ¶ 39. At Folger's request, the now-terminated contractor submitted false, deceptive, and misleading information to Meta. *Id.*

Folger charged four and five-figure prices for his illicit services and appears to have made significant profits. Folger sold usernames at prices ranging from about $700 to at least $50,000, including the username "pnbnation" for $3,000. *Id.* ¶¶ 32, 34. Additionally, one of Folger's Instagram posts promoting his services includes what appears to be a photograph of approximately $100,000 worth of $20 bills, suggesting he obtained that money through his unlawful Instagram services. *Id.* at ¶ 38 & Fig. 4.

### C. Folger Failed to Comply with Meta's Demand to Cease and Desist His Unlawful Conduct.

On March 28, 2023, Meta, through its lawyer Catherine del Fierro of the law firm Perkins Coie LLP ("Perkins Coie"), sent Folger a cease-and-desist letter ("C&D") demanding that he stop violating the Instagram Terms. Compl. ¶ 40 & Ex. A; Declaration of Catherine del Fierro ("del Fierro Decl.") ¶ 2 & Ex. A. The C&D revoked Folger's license to access Instagram and informed him he was no longer authorized to access that service "for any reason whatsoever." Compl. ¶ 41 & Ex. A; *accord* del Fierro Decl. ¶ 2 & Ex. A. Contemporaneous to serving Folger with the C&D, Meta disabled multiple Instagram accounts associated with Folger. Compl. ¶ 40.

Folger's attorney, Michael Cristalli, responded to the C&D on March 29 via email and attached letter. del Fierro Decl. ¶ 3 & Ex. B. Because the cover email and letter were sent to an incorrect email address initially, Ms. del Fierro did not receive either until March 30, 2023 when they were first sent to her correct email address. *Id.* Contrary to Mr. Cristalli's recent statement under penalty of perjury that he "did not receive a response to [his] March 29 letter and Meta's Counsel did not otherwise attempt to communicate with [him] regarding a potential pre-litigation

resolution,"[2] Cristalli Decl. ¶ 5, Ms. del Fierro responded to Mr. Cristalli *the day she received the letter*. del Fierro Decl. ¶ 3 & Ex. C. Ms. del Fierro made ten more attempts via email to communicate with Mr. Cristalli over the next five months, with each email going unanswered. *Id.* ¶¶ 4–5 & Exs. C–D.[3] After a year without any response to Meta's initial C&D beyond the March 29 letter—during which time Folger created new Instagram accounts and continued his illicit activities, Compl. ¶¶ 42–45—Meta sent Mr. Cristalli a second C&D describing evidence of Folger's continuing violations. del Fierro Decl. ¶ 6 & Ex. E. When Mr. Cristalli did not respond, Meta sent the second C&D to Folger directly. *Id.* ¶ 6 & Ex. F. Neither Folger nor Mr. Cristalli ever responded to Meta's second C&D. *Id.* ¶ 7.

Since the initial C&D and continuing until at least February 2025, Folger has repeatedly created new Instagram accounts and obtained control over additional Instagram accounts, which he used to continue offering his illicit Instagram username sales and account reinstatement services. Compl. ¶¶ 42–45.

On February 18, 2025, Meta filed this lawsuit, alleging (1) breach of contract for Folger's violation of the Instagram Terms, and (2) violation of California Penal Code § 502 for Folger's intentional use of Meta's systems after Meta revoked his Instagram access in March 2023. *See* Compl. ¶¶ 47–61. Based on these allegations, Meta is entitled to permanent injunctive relief, compensatory damages, attorneys' fees and costs, and punitive damages. *Id.* ¶¶ 53–55, 61 & Request for Relief.

---

[2] Meta's counsel contacted Mr. Cristalli on April 9 to suggest he correct the material misstatement in Mr. Cristalli's Declaration. *See* Declaration of John D. Freed ("Freed Decl.") ¶ 6. Mr. Cristalli responded that he would review his Declaration and correct the record if he determined he made a misstatement. *Id.* There can be no question that Mr. Cristalli misrepresented facts to this Court. Accordingly, Meta must now correct the record, as Mr. Cristalli has failed to do so.

[3] The only email Mr. Cristalli ever responded to was an email Ms. del Fierro sent Folger directly after three months of Mr. Cristalli's silence and a two-week warning that Ms. del Fierro would contact Folger directly absent Mr. Cristalli's response. del Fierro Decl. ¶ 4 & Exs. C–D. In his response to Ms. del Fierro's email to Folger, Mr. Cristalli promised to respond the next day, but never did—to that email or any of the multiple emails Ms. del Fierro sent thereafter. *Id.* ¶ 4 & Ex. D. Ms. del Fierro also tried to call Mr. Cristalli three times from July 25, 2023 to August 8, 2023. *Id.* ¶ 5 & Ex. D. He never answered and his voicemail was always full. *Id.*

META'S OPPOSITION TO FOLGER'S MOTION TO DISMISS
Case No. 3:25-cv-01672-LB

## III. LEGAL STANDARD

### A. Diversity Jurisdiction

To establish federal jurisdiction under 28 U.S.C. § 1332(a)(1), the proponent must allege (1) the parties have complete diversity of citizenship[4] and (2) the amount in controversy exceeds $75,000. *Naffe v. Frey*, 789 F.3d 1030, 1039 (9th Cir. 2015). Courts use "the 'legal certainty' test to determine whether the complaint meets § 1332(a)'s amount in controversy requirement." *Id.* "Under this test, 'the sum claimed by the plaintiff [in the Complaint] controls if the claim is apparently made in good faith.'" *Id.* at 1040 (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. at 283, 288 (1938)). "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* (quoting *St. Paul Mercury Indemnity Co.*, 303 U.S. at 289); *see also, e.g. Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) ("[W]hen a complaint … alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, such requirement is presumptively satisfied unless it appears to a 'legal certainty' that the plaintiff cannot actually recover that amount.").

The "legal certainty" test "makes it very difficult to secure a dismissal" for failure to satisfy the jurisdictional amount requirement. *Naffe*, 789 F.3d at 1040; *see also, e.g.*, *Molina v. Richardson*, 578 F.2d 846, 849 (9th Cir. 1978) ("The test for determining whether the jurisdictional amount is in controversy is liberally tilted in favor of plaintiffs.").

### B. Motion to Dismiss for Lack of Jurisdiction

"A Rule 12(b)(1) jurisdictional attack can be either facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack challenges the sufficiency of a complaint's allegations on their face. *Id.* With "a facial attack, the court assumes that the complaint's allegations are true and draws all reasonable inferences in the plaintiff's favor." *Smith v. City of Oakland*, 612 F. Supp. 3d 951, 958 (N.D. Cal. 2020) (citation omitted). In contrast, a factual attack disputes the truth of the allegations through "affidavits or other evidence properly brought before the court." *Safe Air for Everyone*, 373 F.2d at 1039. With a factual attack, "the party opposing the motion must furnish affidavits or other evidence

---

[4] Folger does not challenge the parties' diversity of citizenship. Mot. at 4.

5

META'S OPPOSITION TO FOLGER'S MOTION TO DISMISS
Case No. 3:25-cv-01672-LB

necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* The Court may review this evidence and make findings of genuinely disputed facts "without converting the motion to dismiss into a motion for summary judgment." *Id.*

## IV. ARGUMENT

It appears that Folger makes both a facial and factual challenge to jurisdiction. Folger admits "the face of the pleadings" control, indicating his arguments amount to a facial challenge, Mot. at 4 (quoting *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d. 1102, 1106 (9th Cir. 2010)), but Folger also submits a Declaration and makes factual argument regarding the amount of Meta's compensable attorneys' fees. Regardless, Meta has satisfied the $75,000 amount-in-controversy requirement under a facial or factual challenge.

The Complaint includes a good-faith allegation that the "amount in controversy exceeds $75,000" as a composite of the available remedies in this case, which include: compensatory damages, attorneys' fees, injunctive relief, and punitive damages. Compl. ¶ 6. This is all that is required to defeat Folger's Motion. Additionally, to the extent that was in doubt, Meta submits with this Opposition affidavits and evidence demonstrating that it incurred over $75,000 in recoverable pre-litigation investigation, enforcement, and remediation work plus attorneys' fees in this litigation. Given the nature of the allegations in this case, it is impossible for Folger to meet his burden and show to a "legal certainty" that the composite value of the available remedies is less than the $75,000 jurisdictional minimum. *See, e.g.*, *Gen. Motors Corp. v. Manly Oldsmobile-GMC, Inc.*, 2007 WL 776261, *1, 3 (N.D. Cal. 2007) (denying motion to dismiss where the complaint alleged that the defendant caused damage "that greatly exceeds the sum of $75,000" and finding that the defendant did "not establish to a legal certainty" that "there is no set of facts that could be proven that would result in equitable relief which would have a value to [either party] of $75,000.00 or more"). Indeed, there is no question that the amount at issue in this case far exceeds the jurisdictional minimum.

### A. Meta's Attorneys' Fees are Recoverable and Will Exceed $75,000.

Meta is entitled to recover reasonable attorneys' fees under Section 502 and those fees can satisfy the amount-in-controversy requirement. Mot. at 7; *see also* Cal. Penal Code

§ 502(e)(2) ("In any action brought pursuant to this subdivision the court may award reasonable attorney's fees."). When assessing whether the amount-in-controversy requirement is met, courts must consider all fees that the case "necessarily will require" until the "action is resolved." *See Lokey v. CVS Pharmacy, Inc.*, 2020 WL 5569705, *6 (N.D. Cal. 2020) (Beeler, J.) (finding $75,000 threshold met "in the 137th hour of work [at a particular rate], hours that the case necessarily will require"); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) ("The Ninth Circuit clearly considers attorneys' fees when assessing [the] amount in controversy. Such fees necessarily accrue until the action is resolved." (citation omitted)). Accordingly, future attorneys' fees that a plaintiff has not yet accrued must also be included in the amount-in-controversy determination. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("We conclude, in light of *Chavez* and our precedents, that a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met.").

Here, Folger incorrectly speculates that the attorneys' fees in this case cannot exceed $75,000 because of (1) the early posture of this case, and (2) the fact that Meta recently filed a similar lawsuit against another bad actor (which Folger speculates may have reduced the costs associated with this case). Mot. at 7. But this speculation is divorced from reality and fails to consider future fees. In fact, Meta's actual attorneys' fees to-date and projected fees for necessary aspects of this case substantially exceed $75,000. Meta has already incurred $60,000 in fees from Davis Wright Tremaine LLP ("DWT"), and will have incurred at least $95,000 in fees by the time this Motion is heard. *See* Freed Decl. ¶¶ 2–4. Meta reasonably expects to incur at least $150,000 in fees to conduct discovery, and at least an additional $65,000 to litigate through summary judgment. *Id.* ¶ 5. Accordingly, Meta's attorneys' fees alone are sufficient to satisfy the amount-in-controversy requirement.

Apparently recognizing that Meta's attorneys' fees will undoubtedly exceed $75,000, Folger alternatively argues that "any amount Meta claims for attorney fees related to litigation are not reasonable given that Meta's counsel ignored the request from Folger's counsel to review

META'S OPPOSITION TO FOLGER'S MOTION TO DISMISS
Case No. 3:25-cv-01672-LB

the evidence [Meta] purportedly gathered and explore a potential mutually acceptable resolution." Mot. at 7. This argument fails for multiple reasons.

***First***, it is predicated on demonstrably false facts. In support of his Motion, Folger's lawyer, Michael Cristalli, submitted a declaration stating—under penalty of perjury—that Meta never responded to his March 29, 2023 letter responding to the C&D. Folger implies that if Meta's counsel responded, there would have been a pre-suit resolution that would have alleviated the need for litigation. But, in fact, as discussed above, *see supra* Section II.C, Meta's lawyer, Catherine del Fierro, replied the day she received it. del Fierro Decl. ¶ 3 & Ex. C. She then emailed Mr. Cristalli, and Folger himself, a total of ten times, and called Mr. Cristalli three times, all in an effort to follow up on the initial C&D and Mr. Cristalli's March 29, 2023 letter. del Fierro Decl. ¶¶ 4–5 & Exs. C–D. After a year without a further response—during which time Folger continued his illicit activities, Compl. ¶¶ 42–45—Meta sent Mr. Cristalli (and then Folger directly) a second C&D with evidence of Folger's continuing violations. del Fierro Decl. ¶ 6 & Exs. E–F. Aside from Mr. Cristalli's March 29 letter denying misconduct, Folger and his counsel never substantively responded to any of Meta's communications. *Id.* ¶ 7. Folger's allegation that Meta's counsel never responded to Mr. Cristalli's March 29 letter misrepresents the facts and any suggestion that this litigation could have been avoided rings hollow.

***Second***, whether Meta responded to Mr. Cristalli's March 29 letter or engaged in pre-suit settlement discussions is irrelevant. This is not a fee motion regarding the reasonableness of fees claimed. It is a motion to dismiss, challenging the sufficiency of the amount in controversy in this litigation. There is no rule that federal subject matter jurisdiction turns on whether a case could have settled without litigation or whether the parties engaged in pre-suit settlement discussions. Folger does not provide any authority suggesting otherwise.

***Third***, the mere fact that Folger argues that Meta's attorneys' fees are excessive demonstrates that those fees are in fact an amount in controversy. As demonstrated above, that amount exceeds $75,000 and is alone sufficient to satisfy the amount-in-controversy requirement and deny the Motion. *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)

META'S OPPOSITION TO FOLGER'S MOTION TO DISMISS
Case No. 3:25-cv-01672-LB

1  ("The amount in controversy is simply an estimate of the total amount in dispute, not a
2  prospective assessment of defendant's liability.").

### B. A Permanent Injunction Could Cost Folger Over $75,000 in Lost Profits.

Folger's motion should also be denied because as Folger admits, the cost to him of complying with an injunction issued in this case could satisfy the amount-in-controversy requirement. Mot. at 6 (citing *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001)); *accord Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018); *see also Fierro v. Capital One, N.A.*, 2022 WL 17486364, *5 (S.D. Cal. 2022) (value of injunctive relief measured by cost required for defendant to refrain from allegedly deceptive conduct); *Stelzer v. Carmax Auto Superstores Cal., LLC*, 2013 WL 6795615, *7 (S.D. Cal. 2009) (adding cost of complying with injunction to damages to reach $75,000 amount-in-controversy requirement).

Folger offered his services for prices up to at least $50,000 for multiple years and posted a photo of what appears to be $100,000 in cash gained from his services. This suggests that Folger's profits to-date from his illicit services likely exceed $75,000 over nearly three years. *See* Compl. ¶¶ 32, 34, 38 & Fig. 4. Folger's blatant disregard of Meta's two C&Ds and serial creation and use of new Instagram accounts to continue offering his violating services, Compl. ¶¶ 40–46, suggest, absent an injunction, he would indefinitely continue to derive significant value from those services, with future illicit profits likely exceeding $75,000. Accordingly, the value of that business—and the cost to Folger of its loss—satisfies the amount-in-controversy requirement.

In the alternative, to the extent the Court is not satisfied with Meta's showing in this Opposition and attendant Declarations, Meta requests leave to take jurisdictional discovery on Folger's income from the illicit activities alleged in the Complaint to prove the value of Meta's request for injunctive relief.

Rather than argue that he does not stand to lose more than $75,000 in future profits, Folger cites to the standard for injunctive relief, and suggests that Meta needed to make a motion for a preliminary injunction or allege the elements of injunctive relief in its Complaint for the

META'S OPPOSITION TO FOLGER'S MOTION TO DISMISS
Case No. 3:25-cv-01672-LB

value of the injunction to count toward the amount-in-controversy requirement. Mot. at 6. But Folger does not and cannot cite to any legal authority supporting this theory. At this stage, Meta need only (1) show that permanent injunctive relief is the "object of the litigation" and (2) satisfy the "either viewpoint rule," under which "the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 775 (9th Cir. 2017). Meta has done both. *See, e.g.*, *Nat'l Abortion Federation v. Ctr. for Med. Progress*, 533 F. Supp. 3d 802, 823 (N.D. Cal. 2021) (awarding permanent injunction as remedy for breach of contract); *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 782 (N.D. Cal. 2017) (awarding permanent injunction for violation of Cal. Penal Code § 502); *Fierro*, 2022 WL 17486364, *5 (S.D. Cal. 2022) (finding jurisdiction where complying with injunction would allegedly exceed $75,000).

### C. Meta's Compensatory Damages Exceed $75,000.

Folger's Motion also fails because Meta is entitled to compensatory "damages attributable to the efforts and resources it used to investigate and remediate Folger's conduct." *Compare* Compl. ¶ 53, *with Meta Platforms, Inc. v. Arowokoko*, 2023 WL 3035454, *8 (N.D. Cal. 2023) (holding that Meta sufficiently alleged foreseeable consequential damages based solely on "significant time and expense spent investigating and taking enforcement actions against Defendants"). This includes at least the cost of Meta's investigators and the cost of sending and following up on C&Ds to Folger. *See* Compl. ¶¶ 40–45 & Ex. A (detailing pre-litigation work directed to Folger's misconduct); Declaration of Sarah Prutzman ("Prutzman Decl.") ¶¶ 2–5. Those costs are at least $22,515.

*First*, Meta's primary investigator spent approximately 110 hours, between March 2023 and February 18, 2025 when Meta filed its Complaint, investigating Folger, remediating Folger's violations, and preparing a report of his findings. Prutzman Decl. ¶ 2. The cost to Meta of his efforts alone was at least $15,080. *Id.* ¶ 3. Meta incurred additional costs, including those associated with time spent by other investigators. *Id.* ¶ 4.

*Second*, Meta's remediation costs also include work by Perkins Coie. Prutzman Decl. ¶ 5; *cf.* del Fierro Decl. ¶¶ 2–7. Perkins Coie drafted two C&D letters that it sent to Folger on

10

1  Meta's behalf and sent repeated follow-up communications to Folger.  del Fierro Decl. ¶¶ 2–6 &

2  Exs. A–F.  Meta estimates it spent $7,435 "taking enforcement actions against" Folger through

3  Perkins Coie.  *Compare Arowokoko*, 2023 WL 3035454, *8, *with* Prutzman Decl. ¶ 5.

Folger cannot meet his burden to show that Meta's compensatory damages, when combined with the value of other remedies, are less than $75,000 to a legal certainty.  Instead, Folger merely suggests that Meta seeks to recover duplicative amounts.  This is not true.  Meta will merely seek to recover the amount it spent investigating and remediating Folger's illicit acts.

### D. Punitive Damages Further Increase the Amount in Controversy.

"It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001), *holding modified by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005).  The Court may award Meta damages if it holds the Section 502 violation was "willful" and finds Folger guilty "by clear and convincing evidence" of "oppression, *fraud, or malice* as defined in subdivision (c) of Section 3294 of the Civil Code." Cal. Penal Code § 502(e)(4) (emphasis added).  Meta alleged fraud, Compl. ¶¶ 39, 51, and malice, *id.* ¶¶ 39–46, in substance.  *Cf.* Cal. Civ. Code §§ 3294(c)(1), (c)(3) (defining "fraud" and "malice").  Thus, punitive damages may be considered as part of the amount in controversy.

### V. CONCLUSION

As demonstrated above, the amount in controversy significantly exceeds $75,000.  It is not possible to find otherwise with legal certainty.  Thus, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a) and should deny Folger's Motion to Dismiss.

DATED: April 21, 2025

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ Bonnie MacNaughton*
    Bonnie MacNaughton

Attorney for Meta Platforms, Inc.